UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISON

ANDREW B. SHEETS,

      Plaintiff,

v.                                  Case No. 2:25-cv-00644-KCD-DNF

BRANDON ANGELINI in personal
and professional capacity, and CITY OF
PUNTA GORDA,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants, City of Punta Gorda ("City"), and Brandon Angelini, in his individual capacity, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully request this Honorable Court enter an order dismissing the Plaintiff's second amended complaint (Doc. 41) with prejudice.

### Background

Plaintiff, Andrew Sheets, brings another lawsuit against the City of Punta Gorda and its officers.[1] This time, Plaintiff alleges 3 claims – two claims against Officer

---

[1] Although Plaintiff is proceeding without a lawyer, he has plenty of experience litigating in federal court. *See Sheets v. City of Punta Gorda, Florida*, 2:19-cv-484-SPC-MM; *Sheets v. City of Punta Gorda, Florida*, 2:22-cv-246-SPC-NPM; *Sheets v. Bell*, 2:23-cv-35-JLB; *Sheets v. City of Punta Gorda et al.*, 2:24-cv-495-KCD-DNF; *Sheets v. Jimenez et al.*, 2:24-cv-704-SPC; *Sheets v. Prummell et al.*, 2:24-cv-943-SPC-NPM; *Sheets v. Charlotte County et al.*, 2:24-cv-958-JES-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-61-KCD-DNF; *Sheets v. City of Punta Gorda et al.*, 2:25-cv-130-KCD-DNF; *Sheets v. Martin et al.*, 2:25-cv-444-SPC-NPM; *Sheets v. Lipker et al.*, 2:25-cv-493-KCD-DNF; *Sheets v. Pribble*, 2:25-cv-500-KCD-NPM; *Sheets v. Woelk et al.*, 2:25-cv-578-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-583-SPC; *Sheets v. Woelk et al.*, 2:25-cv-611-SPC-NPM; *Sheets v. Gorman et al.*, 2:25-cv-612-KCD-NPM*; Sheets v. Angelini*

Angelini for viewpoint discrimination and retaliation, and a claim against the City of Punta Gorda alleging a variety of issues regarding the City's ordinance. (Doc. 41)[2] Plaintiff alleges that on July 18, 2021, he was provided a ticket for a nominal amount after Officer Angelini conducted an investigation under Punta Gorda Code 16-4(b) regarding Plaintiff's amplified noise disturbance. (Doc. 41, Pg. 6, ¶19, 22). Plaintiff now seeks compensatory damages, a declaratory judgment, and injunctive relief. (Doc. 41, Pg. 17). As plead, the complaint fails to state a proper claim for relief and Officer Angelini is entitled to qualified immunity.

<u>**Grounds for Motion**</u>

1. The City's ordinance is reasonable and constitutes a valid time, place, and manner, restriction.

2. Plaintiff fails to show that the Ordinance is facially unconstitutional

3. The City's ordinance, as applied, was not a First Amendment violation.

4. Angelini is entitled to qualified immunity as he was enforcing an otherwise valid ordinance.

<u>**Memorandum of Law**</u>

**I.   <u>Standard</u>**

To survive a motion to dismiss, a plaintiff must allege " 'sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."' "

---

*et al.*, 2:25-cv-644-KCD-DNF; *Sheets v. Gray, et al.*, 2:25-cv-667-JES-DNF; *Sheets v. Renz et. al.*, 2:25-cv-01000-KCD-DNF
[2] The Plaintiff's pattern of cases bears a startling resemblance to those the Eleventh Circuit observed in *In re Watkins*, 2024 WL 1174182 *2 (11th Cir. 2024).

*Chapparo v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible if a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And although a court must accept a plaintiff's factual allegations as true, it must not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

 *Pro se* parties must comply with the minimum pleading standards set forth in the Federal Rules of Civil Procedure and the Local Rules. *Nawab v. LVNV Funding LLC*, No. 5:12-cv-129-Oc-10PRL, 2012 WL 12918283, at *1 (M.D. Fla. Nov. 19, 2012). A court cannot rewrite an inadequate complaint to plead essential allegations in order to sustain an action. *Pontier v. City of Clearwater, Fla.*, 881 F. Supp. 1565, *1568 (M.D. Fla. April 13, 1995).

## I.   <u>Official Capacity Claim are Inappropriate</u>

It is not clear if Plaintiff is pursuing claims against Angelini solely in his official or individual capacities. For example, Plaintiff lists the claims against Angelini in his individual capacity, but states later that Angelini, was "acting in his official capacity." (Doc. 41, Pg. 6, ¶ 22). To the extent Plaintiff is attempting to sue Angelini in his official capacity he may not do so. Bringing suit against Officer Angelini in his official capacity is the equivalent of suing the City itself. "[N]either a State nor its officers acting in their official capacities are 'persons' under section 1983." *See Will v. Michigan Department of*

*State Police*, 491 U.S. 58, 71 (1989). Section 1983 suits against officers in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent," not against the officer individually. *Kentucky v. Graham*, 473 U.S. 159, 165, (1985) (*quoting Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, (1978)). As long as the entity received notice and the opportunity to respond, an official capacity suit imposes liability only on the entity. *Graham*, 473 U.S. at 166. All claims against Angelini in his official capacity should be dismissed.

## II.    Officer Angelini is Entitled to Qualified Immunity

### a. *Qualified Immunity Standard*

Most importantly, to the extent Officer Angelini is sued in his individual capacity, he is entitled to qualified immunity. The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232, (2009) (*quoting Hunter v. Bryant*, 502 U.S. 224, 227, (1991) (per curiam)). "Although 'the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson*, 555 U.S. at 231 (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). "Qualified immunity balances two important interests—the need to hold public officials

4

accountable when they exercise power irresponsibly and the need *to shield officials from harassment, distraction, and liability when they perform their duties reasonably*." *Id.* (emphasis added). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks and citation omitted). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (internal quotation marks and citation omitted). Essentially, this boils down to "whether the actions are of a type that fell within the employee's job responsibilities." *Id.* (internal quotation marks and citation omitted). There are two parts to this inquiry: whether the defendant "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* Accordingly, investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers. *Nigro v. Carrasquillo*, 152 F. Supp. 3d 1364, 1368 (S.D. Fla. 2015), *aff'd*, 663 F. App'x 894 (11th Cir. 2016). Officer Angelini was indisputably operating in his discretionary capacity. Once an officer has met that burden, the burden then *shifts to the Plaintiff* to show 1) that the conduct violated a constitutional right and 2) the right was clearly established. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

In order to demonstrate that a right is "clearly established" a Plaintiff must provide one of the following 1) reliance on a "materially similar decision of the

Supreme Court, of the [Eleventh Circuit] or of the supreme court of the state in which the case arose[,]" 2) invocation of a "broader, clearly established principle that controls the novel facts[] of the case[,]" or 3) showing that the officer's acts "so obviously violate the Constitution that prior case law is unnecessary." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023) (cleaned up). "If a plaintiff proceeds under the first or second method, he must point to a court decision." *Id.* "The second and third methods require obvious clarity[,]" meaning "the principle must be so apparent that, even without a case with similar facts to light the way, any competent officer would know that his conduct crossed the line." *Id.* (cleaned up). The Supreme Court and Eleventh Circuit have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). This analysis is not predicated on what is obvious to the courts; rather, the Eleventh Circuit has cautioned that the analysis must ask whether "every reasonable officer" would have known the right is clearly established. *See Crocker v. Beatty*, 995 F.3d 1232, 1242 (11th Cir. 2021) (distinguishing *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) and granting qualified immunity to deputy on Plaintiff's First Amendment claims for filming on side of the road).[3] [4]

---

[3] The Eleventh Circuit's First Amendment qualified immunity analysis in *Crocker* focused less on whether the First Amendment conduct was subject to "reasonable time, place, and manner" restrictions under *Smith v. City of Cumming*, and more under whether every reasonable officer would have known the right was clearly established. *Crocker*, 995 F.3d at 1241-43.

[4] Nor can Plaintiff show that the right in question was clearly established. As the City's portion of the argument will show, the law on ordinances that govern excessive noise supports Angelini's entitlement to qualified immunity.

"In the past, courts considered those prongs in order. *Corbitt*, 929 F.3d at 1311. Now, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

This is not the first time that the Plaintiff has alleged – and failed – to meet his burden to overcome qualified immunity when suing Punta Gorda officers for trespassing him on dubious First Amendment grounds. *See e.g Sheets v. Presseller, et. al.*, 2:24-cv-00495-JLB-KCD (M.D. Fla. 2024) (Doc. 163); *Sheets v. Jimenez*, 2025 WL 1725954 (M.D. Fla. June 20, 2025). Nor is this the first time this Court has addressed a Punta Gorda Officer's entitlement to qualified immunity when enforcing an ordinance. *See e.g., Berry v. Smith*, 2025 WL 2193497 (M.D. Fla. July 31, 2025) (granting qualified immunity due to enforcement of existing ordinance). As pled in the instant matter, Plaintiff continues to fail to overcome Angelini's entitlement to qualified immunity.

## III.    First Amendment Claims

### a. *Plaintiff Presents No Viewpoint Discrimination*

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). "A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective the speaker is the *rationale for the restriction*.'" *Jackson v. McCurry*,

762 F. App'x 919, 930 (11th Cir. 2019) (emphasis added) (*quoting Rosenberger v. Rector & Visitors of Univ. of Vir.* 515 U.S. 819, 829 (1995).

Plaintiff has shown the exact opposite. As Plaintiff noted, Officer Angelini approached him and informed him that his "bullhorn" was "plainly audible" from more than 100 feet away. (Doc. 41, Pg. 6, ¶22). Angelini then used a "distance-measuring wheel" to determine how far away from Plaintiff his bullhorn could be heard. (*Id*.). The "rationale for the restriction" was not the *viewpoint* of his speech, but the *excessive noise* that Plaintiff was emitting, which again, Plaintiff mentioned was labeled a "disruption." (Doc. 41, Pg. 7, ¶23). It remains Plaintiff's burden to prove his claims and show that qualified immunity is inappropriate. He has failed to meet that burden. Officer Angelini is entitled to qualified immunity on Plaintiff's claim for viewpoint discrimination, as he has not shown that his alleged "viewpoint" was the reason for his small citation.

Plaintiff claims that that all of Punta Gordas officers know that he has a "government accountability and anti police viewpoint," which they are responsible for knowing through the "doctrine of shared knowledge." (Doc. 41, Pgs. 3, ¶10). However, this is not how the doctrine of shared knowledge (or collective knowledge) works. For purposes of qualified immunity, the Eleventh Circuit considers "the collective knowledge of law officers if they maintained at least a minimal level of communication during their *investigation*." *See e.g. Prospero v. Sullivan*, 153 F.4th 1171, 1184-85 (11th Cir. 2025) (emphasis added), *quoting Garcia v. Casey*, 75 F.4th 1176, 1188 (11th Cir. 2023). This is normally applied among the investigating and arresting police

officers. *Prospero*, 153 F.4th at 1185. Plaintiff has not pled that any other officer was involved in this situation. Plaintiff cannot say that he antagonizes the police force regularly and somehow, they all know what his viewpoint is at each "protest" he engages in. Nor does attaching a random email screen shot from seven months prior (that does not include Angelini) magically make it so. It is a conclusory statement that is not entitled to a presumption of truth at the Rule 12(b)(6) stage. *See Turner*, 65 F.4th at 587.

### b. Plaintiff Fails to Present a Proper Claim for Retaliation

"Retaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1255–56 (11th Cir.2005)). "The elements of a First Amendment retaliation claim are (1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act." *Id*. "In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action *because of the protected speech*." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (emphasis added). A plaintiff must generally show lack of probable cause and that the retaliation was a substantial or motivating factor behind the arrest. *See DeMartini v.*

*Town of Gulf Stream*, 942 F.3d 1277, 1296 (11th Cir. 2019) (*quoting Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019)).

Plaintiff does not sufficiently allege that Officer Angelini provided him a ticket *because of* any protected activity. First, as explained below, Plaintiff was not engaged in a protected activity, as the Ordinance is reasonable. Second, Angelini issued the Plaintiff a ticket because of an existing Ordinance. As Plaintiff has pled, the subjective motivation was the ordinance which provided arguable probable cause for the citation and serves as a bar to Plaintiff's First Amendment retaliation claims.

### b. *Probable Cause Bars Plaintiff's Retaliation Claims*

To overcome Officer Angelini's entitlement to qualified immunity, Plaintiff must show that Angelini lacked probable cause to issue the ticket. The existence of probable cause is a bar to a §1983 claim for First Amendment retaliation. *See Nieves v. Bartlett*, 587 U.S. 391, 405 (2019). ("Probable cause should generally defeat a First Amendment retaliatory arrest claim."); *see also Prospero v. Sullivan*, 153 F.4th 1171, 1188 (11th Cir. 2025). Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013).

However, to receive qualified immunity for First Amendment claims, Officer Angelini needs only arguable probable cause. *Redd v. City of Enterprise,* 140 F.3d 1378, 1383 (11th Cir. 1998); *Phillips v. Irvin*, 222 Fed. Appx. 928, 929 (11th Cir. 2007).

Arguable probable cause exists where a reasonable officer in the same circumstances and possessing the same knowledge as she possessed could have believed that probable cause existed. *Wilkerson*, 736 F.3d at 977–78. Arguable probable cause does not require proof of every element of a crime. *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018). Here, arguable probable cause existed under the City's Ordinance:

> Loud sound making devices. Except as part of a special event approved by the City, no person may operate any radio, tape player, CD player, or other electronically amplified sound making device or instrument so that the same is plainly audible at a distance of one hundred (100) feet or more from the device or instrument.

> Chapter 16, Section 16-4(b). [5]

Here, Plaintiff "play[ed] music" through a "bullhorn" to broadcast profanity, which created excessive noise. (Doc. 41, Pg. 6, ¶19). Angelini approached, informed Plaintiff his bullhorn was "plainly audible" and used a "distance-measuring wheel" to confirm the distance. (*Id*. at ¶22). Under the language of the City's ordinance, arguable probable cause clearly existed to cite the Plaintiff.

Additionally, even if the Court were to determine the City's Ordinance unconstitutional, this still does not thwart Angelini's entitlement to qualified immunity. The Supreme Court has stated: "Police are charged to enforce laws until and unless they are declared unconstitutional." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). Even if an ordinance is subsequently declared unconstitutional, this does not invalidate an arrest (or seizure). *Id. at* 37-38. (refusing to invalidate arrest and search

---

[5]  *See* Punta Gorda Code of Ordinances https://www.ci.punta-gorda.fl.us/government/city-clerk/code-of-ordinances (last visited August 18, 2025).

because probable cause existed and officer had no reason to know, under controlling precedent, that ordinance supporting arrest would later be declared unconstitutional). The City's Ordinance(s) is still on the books and it was appropriate for Angelini to enforce it. *See Berry v. Smith*, 2025 WL 2193497 (M.D. Fla. July 31, 2025).

### c. Plaintiff's Conduct Does Not Fall Under Any Exception

There are "two narrow exceptions" where probable cause does not defeat a retaliation claim. *Turner v. Williams*, 65 F.4th 564, 585 (11th Cir. 2023). The first is "when the 'unique' five factual circumstances" from *Lozman v. Riviera Beach*, 585 U.S. 87, 100 (2018) are all present. *Turner*, 65F.4th at 686. The Plaintiff hardly (if at all) attempts to meet the five elements of *Lozman*.

The second exception exists "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* (*citing Nieves*, 597 U.S. at 406). To meet this exception, Plaintiff must "present[s] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 597 U.S. at 407. The "statements and motivations of the particular arresting officer are irrelevant" to the second exception." *Id*. This exception is "narrow," and as the Supreme Court explained, made in the context of mundane small infractions, such as jaywalking. *See Nieves*, 597 U.S. at 406-07. It can hardly be said that engaging in caustic and offensive behavior and using a bullhorn to disturb other park patrons is what the Supreme Court had in mind when crafting this narrow exception. Likewise, neither should this Court. Plaintiff cannot

12

consistently engage in a pattern of cursing and disruptive behavior in public places and then sue individuals who confront him. *See e.g., In re Watkins*, 2024 WL 1174182 (11th Cir. 2024).[6]

Moreover, Plaintiff's attempt to meet the "objective evidence" requirement of *Nieves* is without merit. He alleges that "Punta Gorda officers usually do not give citations for individuals using loud soundmaking devices." (Doc. 41, Pg. 8, ¶33). He also alleges that other protests occurred in Punta Gorda but that no citations were issued. (*See e.g., Doc.* 41, Pgs. 9-11, ¶34-39). However, this is conclusory. Plaintiff provides no evidence to support these statements. He provides no evidence that Officer Angelini was present at these events, where they occurred, that they occurred at the same time and location as his incident, or that they shared the same viewpoint as he did. Nor can he, as his cited comparator events appear to have been in 2018 and 2020, years prior to the event in this case.

These are simply conclusory allegations that are not entitled to a presumption of truth at the Rule 12(b)(6) stage, *Turner*, 65 F.4th at 587, and are improper comparators sufficient to properly plead First Amendment retaliation or viewpoint discrimination claims. *See Sheets v. Jimenez*, No. 2:24-CV-704-SPC-KCD, 2025 WL 807345, at *3 (M.D. Fla. Mar. 13, 2025), (finding Plaintiff's cited comparators inadequate because he failed to allege their viewpoint, "let alone that their viewpoint

---

[6] Moreover, similar to Watkins, given Plaintiff's pattern of filing lawsuits and disruptive behavior, which includes provoking other individuals, and the likely admission of Rule 404(b) evidence at trial, it means there is little to no likelihood that he could ever prevail on claims of non-physical injury damages before a jury. *See In re Watkins*, 2024 WL 4119035 *2 (11th Cir. 2024).

differs from his"); *Matacchiero v. McCormick*, No. 3:24CV105-TKW-ZCB, 2024 WL 3629442, at *6 (N.D. Fla. Aug. 1, 2024) (dismissing a First Amendment claim because the plaintiff "did not identify any other speakers who had different viewpoints than him"); *Sheets v. Angelini et. al.*, 2:25-cv-00653-SPC-NPM (Doc. 23) (dismissing Plaintiff's retaliation and viewpoint discrimination claims for failing to allege proper comparators).

Plaintiff ultimately provides no specific facts to show that he was targeted for any viewpoint as opposed to his loud, disruptive behavior. He fails to provide proper compactors and his First Amendment claims against Angelini fail as a matter of law. Angelini respectfully requests qualified immunity be granted and these claims disposed of against him.

## IV.    Plaintiff Fails to Bring a Valid *Monell* Claim

### a.  The City's Ordinance is both Viewpoint and Content Neutral and Reasonable

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). In a traditional public forum – for example, city streets and sidewalks - the government may impose reasonable restrictions on the time, place, or manner of protected speech, so long as the restrictions "[1] are justified without reference to the content of the regulated speech, ... [2] are narrowly tailored to serve a significant governmental interest, and ... [3] leave open ample alternative channels for communication of the information." *Ward v. Rock*

*Against Racism,* 491 U.S. 781, 791, (1989). The City's Ordinance meets all three categories.

Plaintiff's lawsuit falls under a long line of cases regarding noise ordinances. The government "ha[s] a substantial interest in protecting its citizens from unwelcome noise." *Ward v. Rock Against Racism,* 491 U.S. 781 796 (1989) (quoting *City Council of L.A. v. Taxpayers for Vincent,* 466 U.S. 789, 806 (1984)). While this interest is at is greatest when it concerns " 'the well-being, tranquility, and privacy of the home,' ... the government may act to protect even such traditional public forums as city streets and parks from excessive noise." *Id.* (quoting *Frisby v. Schultz,* 487 U.S. 474, 484 (1988)). Regulating noise by decibel level standards is also generally constitutionally permissible. *See Kovacs v. Cooper,* 336 U.S. 77, 81-82 (1949) (finding that city ordinance prohibiting use of sound trucks on city streets emitting loud and raucous noise was not so indefinite as to violate due process).

The City's Ordinance states:

> Loud sound making devices. Except as part of a special event approved by the City, no person may operate any radio, tape player, CD player, or other electronically amplified sound making device or instrument so that the same is plainly audible at a distance of one hundred (100) feet or more from the device or instrument.

Chapter 16, Section 16-4(b). [7]

On its face, the City's Ordinance is content neutral. It places no restriction on either particular viewpoint or subject matter to be discussed. The purpose of the

---

[7]   *See* Punta Gorda Code of Ordinances https://www.ci.punta-gorda.fl.us/government/city-clerk/code-of-ordinances (last visited August 18, 2025).

Ordinance serves the City's interest in protecting its citizens from unwelcome noise. *See Ward*, 491 U.S. at 796. If a law is "unrelated to the content of speech," it triggers only intermediate scrutiny. *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642 (1994).

A law subject to intermediate scrutiny will survive only if it is "narrowly tailored to serve a significant governmental interest" and it "leave[s] open ample alternative channels for communication." *Ward*, 491 U.S. at 791. Under intermediate scrutiny, the government has leeway to pursue a wider range of interests. And "narrow tailoring" under intermediate scrutiny, unlike under strict scrutiny, does not limit the government to only the "least restrictive means" of furthering its significant interest. *Id*. at 798. Instead, narrow tailoring under intermediate scrutiny means only that the law does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Packingham v. North Carolina*, 582 U.S. 98, 106 (2017).

The City's Ordinance does not place any more restrictions than is necessary to implement this interest, is narrowly tailored, and leaves open ample alternative channels of communication. *See Ward*, 491 U.S. at 791.  It does not place restrictions on unamplified sound or visual means of communication and thus does not burden substantially more speech than necessary to further the City's interests. In fact, the Ordinance is generally less restrictive than the noise restriction the Supreme Court approved in *Madsen v. Women's Health Center*, which restrained "singing, chanting, whistling, shouting, yelling, *use of bullhorns*, auto horns, sound amplification equipment or other sounds … within earshot of the patients inside the clinic during

the house of 7:30 a.m. through noon on Mondays through Saturdays." 512 U.S. 753, 772 (1994). (emphasis added).

Here, the Ordinance's language, like the ordinance in *Pine v. City of West Palm Beach, FL,* "in no way restricts the use or display of signs or the distribution of literature, thereby providing reasonable modes of communications.", 762 F.3d 1262, 1274-75 (11th Cir. 2014). Consequently, Plaintiff cannot show that the provision fails to provide ample alternative channels of communication. *See Henderson v. McMurray*, 611 F.Supp. 3d 1287, 1298 (N.D. Ala. Feb. 4, 2020); *see also Medlin v. Palmer*, 874 F.2d 1085, 1090 (5th Cir. 1989) (finding that an ordinance that prohibits the use of amplified sound within 150 feet of a hospital or health clinic "falls way short of precluding alternative avenues of communication").[8]

### b. *Plaintiff Fails to Allege a Facial Challenge*

As the Eleventh Circuit has noted, "[a] facial challenge .. seeks to invalidate a statute or regulation itself." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007). In the First Amendment context, a facial challenge to a law succeeds only when "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021). As explained above, the City's ordinance is content neutral

---

[8] The Constitution only requires that the City leave open *an* alternative channel of communication, not *the* channel of communication that Plaintiff might prefer. *See CAMP Legal Def. Fund, Inc. v. City of Atlanta,* 451 F.3d 1257, 1282 (11th Cir. 2006).

and reasonable and Plaintiff's complaint utterly fails to provide one iota of evidence that a substantial number of the Ordinance's applications are unconstitutional.

A facial challenge requires a heavier burden of proof than an as-applied challenge. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998). "The Supreme Court has expressed disfavor for facial challenges because they 'often rest on speculation' and 'raise the risk of premature interpretation of statutes on the basis of factually barebones records.' " *Sons of Confederate Veterans, Inc. v. Atwater*, 2011 WL 1233091, at *7 n.13 (M.D. Fla. Mar. 30, 2011) (Antoon, J.) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008). In essence, Plaintiff has walked into this Court, declared the law unconstitutional, and has asked this Court to agree – but the Supreme Court has made it clear that this is not enough.

Additionally, in the context of an as-applied challenge, the court looks to whether a law with some permissible use "is nonetheless unconstitutional as applied to [defendant's] activity." *Spence v. Washington*, 418 U.S. 405, 414 (1974). The face of Plaintiff's complaint clearly indicates that he violated the City's ordinance and that it was not applied in an unconstitutional manner. Plaintiff stated that he used a handheld bullhorn to play music. (Doc. 41, Pg. 6, ¶22). Additionally, Plaintiff admits that Officer Angelini used a "distance-measuring wheel." *Id*. Plaintiff's own complaint reflects that Officer Angelini was motivated not by Plaintiff's content or viewpoint, but by the amplified sound Plaintiff was projecting, which disturbed the peace and quiet of other park guests. Plaintiff may believe that using a bullhorn to "protest" is a valid method, but the First Amendment does not allow a free-for-all when in the public setting.

### c.   The Ordinance is not Unconstitutionally Vague

Plaintiff attempts to claim that the City's ordinance is unconstitutionally vague because it does not define "plainly audible." (Doc. 41, Pg. 16, ¶63). An ordinance is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). A plaintiff asserting that a statute is void for vagueness must show either: (1) the statute fails to give fair notice of wrongdoing; or (2) the statute lacks enforcement standards such that it might lead to arbitrary or discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). "[T]he Constitution demands a high level of clarity from a law if it threatens to inhibit the exercise of a constitutionally protected right, such as the right of free speech or religion." *Konikov v. Orange Cnty.*, Fla., 410 F.3d 1317, 1329 (11th Cir.2005).

The Ordinance cannot be read word-for-word in isolation. "Audible" simply means "heard or capable of being heard."[9] It is comprehensible to persons of ordinary intelligence. The Ordinance goes on and establishes that plainly audible applies when a device can be heard at a distance of 100 feet or more. In effect, this is not "rocket science." The terms of the City's Ordinance are in simple English - if someone can plainly hear your noise from 100 feet away, the City's Ordinance has been violated. Persons of ordinary intelligence are not left to guess at what conduct is prohibited, and the ordinance does not create the risk of arbitrary application – in fact, Plaintiff's

---

[9] *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/audible (Last visited September 23, 2025).

complaint shows that the Ordinance was *not* arbitrarily applied – Angelini used a distance measuring wheel. *See e.g., Occupy Fort Myers v. City of Fort Myers*, 882 F.Supp. 2d 1320, 1337 (M.D. Fla. Nov. 15, 2011) (holding that plaintiffs failed to show city ordinance was unconstitutionally vague as it was clear the public may not set up tents, shacks, or other temporary structures to camp in a park overnight). The Ordinance provides fair notice and by its own terms cannot be arbitrarily enforced.

### d.  The Ordinance is not a Prior Restraint

Finally, Plaintiff claims that because he cannot broadcast loud obnoxious noise in a public setting without special event approval from the City, this constitutes a prior restraint. However, he provides absolutely no evidence that the Ordinance is a prior restraint. The Supreme Court has recognized that a law that "subject[s] the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969). Typically, licensing schemes suffer from two defects – discretion and opportunity for delay. *See Wacko's Too v. City of Jacksonville*, 658 F. Supp. 1086, 1118 (M.D. Fla. Feb. 27, 2023). Plaintiff's complaint is completely silent in this regard. He provides nothing other than conclusory allegations and copy-and-pasted snippets of generic legal dicta to support his claims. Nor should the Court permit any response that attempts to rectify these pleading deficiencies at this stage.

## CONCLUSION

The City's Ordinance is content and viewpoint neutral and reasonable. It was not applied in an unconstitutional manner. Angelini applied an otherwise lawful ordinance and had arguable probable cause to do so. He is entitled to qualified immunity. Defendants request the Court dismiss yet again another one of Plaintiff's complaints with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel and Plaintiff, Andrew Sheets, have conferred in good faith via email on the 26th day of November, 2025, regarding the relief requested herein. Mr. Sheets is opposed to the relief requested in this motion.

Respectfully submitted,

*/s/ David R. Jadon*
David R. Jadon, Esquire
Florida Bar No.: 1010249

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of November, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a true and correct copy of the foregoing through a notice of electronic filing to all parties of record, and on this 28th day of November, 2025 I served copies via e-mail upon the following non-CM/ECF participant: Andrew Bryant Sheets, Pro se, 11408

21

Pepperdine        Street,        Punta        Gorda,        FL        33955        at:

deprivationofrightsunderlaw@gmail.com.

/s/ David R. Jadon
David R. Jadon, Esquire
Florida Bar No.:  1010249
Roper, Townsend & Sutphen, P.A.
255 S. Orange Avenue, Suite 750
Orlando, FL  32801
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Primary:  djadon@roperpa.com
Secondary:  lramirez@roperpa.com
*Attorney for Defendants Brandon Angelini in his individual capacity, and City of Punta Gorda*