UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

      Plaintiff,

    v.

BRANDON ANGELINI, IN
PERSONAL CAPACITY, AND
CITY OF PUNTA GORDA,

      Defendants.

_____/

Case No. 2:25-cv-644-KCD-DNF

## **ORDER**

Plaintiff Andrew Sheets styles himself a First Amendment crusader, embroiled in an eternal war of words with Defendant City of Punta Gorda. He takes to the sidewalks for battle. But according to Sheets, the City doesn't fight fair.

After bullhorn-blasting police criticism, Sheets was cited by Defendant Brandon Angelini, a Punta Gorda police officer, for violating the City's noise ordinance. He now sues Angelini and the City under 42 U.S.C. § 1983, challenging the ordinance as facially unconstitutional and alleging that Angelini violated his First and Fourteenth Amendment rights.

Defendants move to dismiss the case (Doc. 42),[1] contending that Officer Angelini is shielded by qualified immunity and that the ordinance is constitutionally legitimate. (*Id*.) Sheets has responded (Doc. 48), making this matter ripe. As explained below, Angelini is entitled to qualified immunity, and Sheets's facial challenge only partially fails. Defendants' motion is thus **GRANTED in part** and **DENIED in part**.

## I. Background

Here are the relevant facts taken from the operative complaint, which must be accepted at this stage. Sheets has a "[g]overnment accountability and anti[-]police viewpoint." (Doc. 41 ¶ 10.) He makes this known. He "belittles any Punta Gorda officer with a verbal tirade of profanities when[ever] he believes a[n] officer has violated his rights." (*Id*.) And he believes "it is more than likely that [he] has cussed out each and every" Punta Gorda police officer. (*Id*.)

On the day in question, Sheets protested the City's indecent sign ordinance from a public sidewalk. (*Id*. ¶ 11.) In keeping with tradition, he "displayed a viewpoint that was critical of the [C]ity of Punta Gorda including its employees and police officer[s]." (*Id*.) He did this using a "handheld

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

bullhorn" to blast "profanity," "satire," and even an "[A]dam [S]andler song." (*Id*. ¶¶ 19, 43.)

That earned Sheets a citation under the City's noise ordinance, courtesy of Officer Angelini. The ordinance provides:

> Except as part of a special event approved by the City, no person may operate any radio, tape player, CD player, or other electronically amplified soundmaking device or instrument so that the same is plainly audible at a distance of one hundred (100) feet or more from the device or instrument.

Punta Gorda Code of Ordinances § 16-4(b).

Using "a distance-measuring wheel," Angelini clocked Sheets's bullhorn as "plainly audible at more than 100 feet." (Doc. 41 ¶ 22.) Sheets claims this ticket stopped his speech, chilled his future expression, and was viewpoint-driven—all in violation of his First and Fourteenth Amendment rights. (*Id*. ¶¶ 23, 24.) He further challenges the noise ordinance itself as facially unconstitutional. (*Id*. ¶¶ 56-67.) Defendants now move to dismiss these claims under Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

"To prevent dismissal under Rule 12(b)(6), the plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face." *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1291 (11th Cir. 2025). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). The Court "need not, however, accept as true a complaint's conclusory allegations or legal conclusions." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021).

### III. Discussion

Defendants contend that qualified immunity shields Officer Angelini from the First Amendment claims. And they insist that Sheets's facial challenge against the ordinance is insufficiently pled. The Court agrees, with two caveats.

First, Sheets's facial challenge holds up insofar as it is based on unbridled discretion. The ordinance clearly imposes a prior restraint on speech, and on the current record, it lacks the necessary safeguards. Second, Defendants do not address Sheets's overbreadth challenge. So that claim also survives—for now. Otherwise, as explained below, qualified immunity blocks Sheets's First Amendment claims and his vagueness challenge to the ordinance fails. The Court addresses each claim in turn.

## A. First Amendment Claims

Sheets alleges two First Amendment claims against Officer Angelini. The first centers on viewpoint discrimination and claims Sheets was cited under the ordinance only because of his speech's content. (Doc. 41 ¶¶ 40-46.) The other alleges Officer Angelini cited Sheets in retaliation for his speech. (*Id.* ¶¶ 47-52.)

The First Amendment bars governmental bodies—including municipalities and their employees—from "abridging the freedom of speech." U.S. Const. amend. I; *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1268 (11th Cir. 2004) ("The First Amendment, as incorporated through the Due Process Clause of the Fourteenth Amendment, applies to state and municipal governments, state-created entities, and state and municipal employees[.]"). This means police departments and their officers cannot "regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Moms for Liberty-Brevard Cnty., FL v. Brevard Pub. Schs.*, 118 F.4th 1324, 1331 (11th Cir. 2024). Nor can they retaliate against speakers for exercising their freedom of speech. *See, e.g., Bell v. Sheriff of Broward Cnty.*, 6 F.4th 1374, 1376 (11th Cir. 2021).

When either of these things happens, 42 U.S.C. § 1983 offers a remedy. It "creates a cause of action against any person who deprives someone of their federally protected rights under color of state law." *King v. Marceno*, No. 2:24-

CV-375-KCD-DNF, 2025 WL 3080544, at * 4 (M.D. Fla. Nov. 4, 2025). But, important here, qualified immunity can stand in the way.

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crocker v. Beatty*, 995 F.3d 1232, 1239 (11th Cir. 2021). A government official may seek dismissal on these grounds prior to discovery, "based solely on the allegations in the pleadings." *Holloman*, 370 F.3d at 1263 n.6. The official has the initial burden of showing he acted within his discretionary authority when the alleged violation occurred. *See, e.g.*, *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1278 (11th Cir. 2025), *Settle v. Collier*, 160 F.4th 1282, 1288 (11th Cir. 2025).

Sheets concedes this threshold requirement: Officer Angelini was allegedly acting under color of state law when he issued the citation. (Doc. 43 ¶¶ 44, 53.) So for his First Amendment claims to survive, Sheets must prove that qualified immunity does not apply. *See, e.g.*, *Watkins v. Davis*, 156 F.4th 1084, 1097 (11th Cir. 2025), *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009). This calls for Sheets to show that the constitutional right violated was "clearly established" in one of three ways: he can (1) "show that a materially similar case has already been decided"; (2) "show that a broader, clearly established principle should control the novel

6

facts of a particular situation"; or (3) "show that h[is] case fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary." *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019).

Sheets does none of that. He first trots out several quotes touting the First Amendment's purpose. Such quotes include "speech on public issues occupies the highest rung of the hierarchy of First Amendment values"; "[s]peech on matters of public concern . . . is at the heart of the First Amendment's protection."; and "At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of interest and concern." (Doc. 41 at 3-4.) That's all good stuff, but it's far too generic to cover the situation here.

"A plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000). So while the law allows Sheets to cite "broad, clearly established" principles, he can't simply lob basic, highly-general concepts and expect that to work. *See Crocker*, 995 F.3d at 1240-41. Instead, his broad statements must obviously "appl[y] to the specific situation in question here." *Id.*; *see also Gaines v. Wardynski*, 871 F.3d 1203, 1213 (11th Cir. 2017), *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) ("[I]f a plaintiff relies on a general rule, it must be obvious that the general rule

7

applies to the specific situation in question."). None of the statements Sheets offers do that and thus won't defeat qualified immunity.

Sheets also leans on a purportedly "very similar case": *Berry v. Smith*, No. 2:25-CV-299-JES-NPM, 2025 WL 3906027 (M.D. Fla. Dec. 3, 2025). (Doc. 48 at 5-6). This too fails. Only Supreme Court, Eleventh Circuit, or Florida Supreme Court caselaw can prove a clearly established right. *See Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011); *Vielma v. Gruler*, 808 F. App'x 872, 879 (11th Cir. 2020). *Berry* is a district court case, so it "cannot clearly establish the law for qualified immunity purposes." *Gaines*, 871 F.3d at 1211; *see also Jackson v. McCurry*, 762 F. App'x 919, 928 (11th Cir. 2019).

Sheets does zero in on his viewpoint discrimination claim by quoting excerpts from *Huggins* and *Moms for Liberty*. But pulling a few sentences from those cases is not enough to overcome qualified immunity here. *Huggins* and *Moms for Liberty* involved speech at school board meetings. *See Huggins*, 151 F.4th at 1276; *Moms for Liberty*, 118 F.4th at 1328-29. And both govern this claim only insofar as they confirm that viewpoint discrimination is unconstitutional. *See Huggins*, 151 F.4th at 1276, 1280; *Moms for Liberty*, 118 F.4th at 1331-32. Beyond that, they shed little light on whether Officer Angelini had fair warning that enforcing the noise ordinance was illegal. And that is what matters. *See Muszik v. Town of Redington Shores*, No. 8:22-CV-2387-CEH-SPF, 2024 WL 2273187, at *9 (M.D. Fla. May 20, 2024).

8

Lastly, Sheets cites no controlling caselaw concerning his retaliation claim. So "[e]ven considering that it is settled law that the government may not retaliate against citizens for the exercise of First Amendment rights," Sheets's fails to show "that the broad constitutional rule applies with obvious clarity to the factual allegations in this case." *Wall-DeSousa v. Johnson*, No. 614CV1959ORL41DAB, 2016 WL 9444142, at *4 (M.D. Fla. Jan. 19, 2016); *see also Ballard v. Davis*, No. 5:25-CV-46 (MTT), 2025 WL 2784593, at *3 (M.D. Ga. Sept. 26, 2025) (concluding defendants were entitled to qualified immunity where plaintiff "made no effort to carry his burden of showing clearly established law."); *Polion v. City of Greensboro*, 26 F. Supp. 3d 1197, 1224 (S.D. Ala. 2014) ("The plaintiff makes no effort to carry his burden to show it was clearly established in 2012 that the individual defendants' conduct violated clearly established constitutional law, and the Court will not intercede on his behalf.").

Sheets stresses, repeatedly and with understandable conviction, that he has a constitutional right to protest. And he is exactly right about that. The First Amendment firmly protects his right to stand on a public sidewalk and express his views, however offensive or unpopular they might be to the listeners around him.

But that undisputed premise does not resolve this case. Sheets admits in his complaint that he was using a handheld bullhorn to broadcast his

music and messages. He does not deny that his sound was electronically amplified, nor does he dispute that Officer Angelini actually used a "distance-measuring wheel" to confirm the noise carried beyond the 100-foot limit set by the City's ordinance. When an officer enforces a local noise ordinance against a protester using a bullhorn, as here, to strip him of qualified immunity requires more than simply invoking the First Amendment in the abstract. Sheets must point to clearly established law that squarely put the officer on notice that his specific conduct was unconstitutional. *See Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) ("Police are charged to enforce laws until and unless they are declared unconstitutional.").

Sheets fall far short of this hurdle. While he cites broad First Amendment principles celebrating uninhibited debate, he provides no clearly established law dictating that an officer violates the Constitution by citing a protester who uses an amplified bullhorn in direct violation of a distance-based noise ordinance. He gives the Court no case with materially similar facts where an officer was held liable for doing what Officer Angelini did here. And that is what matters. Because Sheets has not shown that Officer Angelini violated a clearly established right by enforcing a straightforward noise restriction, qualified immunity must apply here. *See Muszik*, 2024 WL 2273187, at *9.

10

## B. The Facial Challenge

Facial challenges seek "to invalidate a statute or regulation itself." *United States v, Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000). They are "ordinarily disfavored and are generally harder to win." *Moms for Liberty*, 118 F.4th at 1333. Sheets's facial challenge hinges on three separate theories: unbridled discretion, overbreadth, and vagueness. The Court addresses each theory separately.

### i. Unbridled Discretion

"A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." *Frandsen*, 212 F.3d at 1236-37. This is typically done through a permitting or licensing scheme. *See, e.g.*, *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1223 (11th Cir. 2017). Such a scheme can be facially unconstitutional if it "vests unbridled discretion in a government official over whether to permit or deny expressive activity." *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 809 (11th Cir. 2020). "Unbridled discretion exists where an ordinance lacks precise and objective standards to guide the permitting authority." *The Lamar Co. v. City of Marietta, Ga.*, 538 F. Supp. 2d 1366, 1373 (N.D. Ga. 2008); *see also Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1321 (11th Cir. 2024). So, pleading this claim generally requires plaintiffs to identify a permitting scheme that restricts speech without concrete approval criteria.

Sheets does just that. The City's noise ordinance is clearly a prior restraint, since it keeps speakers from blasting their messages via electronic amplifiers unless done "as part of a special event approved by the City." Punta Gorda Code of Ordinances § 16-4(b); *see also Fla. Beach Advert., LLC v. City of Treasure Island, Fla.*, 511 F. Supp. 3d 1255, 1271 (M.D. Fla. 2021). The City offers no information or explanation for what actually counts as a "special event," nor how it decides who gets approved. So right now, the record is absolutely empty of any standards, guidelines, or metrics governing the City's approval process. Without those necessary guardrails, there is a very real danger that a municipal official could deny an amplifier to a controversial protester while handing one to a popular local band. At the pleading stage, pointing out that unchecked government power is enough. *See Naples Pride v. City of Naples*, No. 2:25-CV-291-JES-DNF, 2026 WL 91486, at *12 (M.D. Fla. Jan. 13, 2026). So this theory lives on.

### ii. Vagueness

"The void-for-vagueness doctrine is grounded in the Due Process Clauses of the Fifth and Fourteenth Amendments[.]" *Cotriss v. City of Roswell*, No. 19-12747, 2022 WL 2345729, at *6 (11th Cir. June 29, 2022). This "doctrine serves two central purposes: (1) to provide fair notice of prohibitions, so that individuals may steer clear of unlawful conduct; and (2) to prevent arbitrary and discriminatory enforcement of laws." *Tracy*, 980

F.3d at 807. "Vagueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Mason v. Fla. Bar*, 208 F.3d 952, 958 (11th Cir. 2000).

Sheets claims the ordinance's "plainly audible" standard is fuzzy and invites arbitrary enforcement. The Court disagrees. The ordinance directly tells people that they cannot electronically amplify sounds so loudly that they can be heard a hundred feet out. *See Pine v. City of W. Palm Beach, FL*, 762 F.3d 1262, 1275 (11th Cir. 2014). It does not have to define "plainly audible" in granular detail or provide a mathematical formula for people to get the message. *See State v. Catalano*, 104 So. 3d 1069, 1076 (Fla. 2012); *see also Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). And its objective, one-hundred-feet-away standard shields against "an inherent risk of arbitrary enforcement." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1272 (11th Cir. 2007). So Sheets fails to plead a plausible vagueness challenge, and this theory must be dismissed. *See Henderson v. McMurray*, 987 F.3d 997, 1004 (11th Cir. 2021), *Catalano*, 104 So. 3d at 1076, *Smith v. Augusta-Richmond Cnty., Ga.*, No. CV 122-149, 2024 WL 1257494, at *5 (S.D. Ga. Mar. 25, 2024).

### iii. Overbreadth

"The overbreadth doctrine prohibits the [g]overnment from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002). Sheets alleges the noise ordinance is overbroad since it "prohibits a substantial amount of constitutionally protected speech . . . in traditional public forums" and lacks time, place, and manner restrictions. (Doc. 41 ¶ 64.)

Defendants do not put up much of a fight here. They generally contend that Sheets has not pled a facial challenge and merely parrot the overbreadth standard. (Doc. 42 at 17.) "It is not the role of the Court to make arguments for the parties but to consider and decide the specific arguments made by the[m]." *Monroe Cnty. Employees' Ret. Sys. v. S. Co.*, 333 F. Supp. 3d 1315, 1322 (N.D. Ga. 2018). Since Defendants offer no precise challenge to this claim, it survives for the time being. *See Perry v. Caleb's Club, LLC*, No. 609CV853ORL35DAB, 2010 WL 11507330, at *3 (M.D. Fla. Feb. 1, 2010), *Fontainebleau Fla. Hotel, LLC v. Botach*, No. 1:25-CV-20251-KMM, 2025 WL 3282568, at *4 (S.D. Fla. Sept. 16, 2025), *Baker v. Warner/Chappell Music, Inc.*, No. 14-22403-CIV, 2017 WL 4310750, at *14 n.13 (S.D. Fla. Sept. 28, 2017) ("Because the Crane Defendants did not raise this specific argument in their motion to dismiss, the Court retains this count against them.").

14

## IV. Conclusion

In sum, qualified immunity shields Officer Angelini from suit here, so Counts One and Two cannot stand. Count Three is also dismissed insofar as it hinges on a void-for-vagueness theory. It otherwise survives. Defendants' Motion to Dismiss (Doc. 42) is therefore **GRANTED in part** and **DENIED in part**. The City must answer the surviving claims within fourteen days. The Clerk is **DIRECTED** to terminate Defendant Brandon Angelini.

**ORDERED** in Fort Myers, Florida on February 20, 2026.

Kyle C. Dudek
United States District Judge

15